**Boyd M. HITZ and Judy Lynn Hitz, Appellants,**

v.

**The ZONING HEARING BOARD OF SOUTH ANNVILLE TOWNSHIP.**

Commonwealth Court of Pennsylvania.

Argued April 15, 1999.
Decided July 9, 1999.

Paul C. Bametzreider, Lebanon, for appellants.

Michael H. Small, Palmyra, for appellee.

Before SMITH, J., FRIEDMAN, J. and KELLEY, J.

FRIEDMAN, Judge.

■ Boyd M. Hitz and Judy Lynn Hitz (Landowners)[1] appeal from an order of the Lebanon County Court of Common Pleas (trial court) which affirmed the decision of the South Annville Township (Township) Zoning Hearing Board (ZHB) denying Landowners' application for a variance to expand their nonconforming use of their property as an antiques mall. We also affirm but on different grounds.[2]

■ In 1949, Landowners purchased the property in question for use as a family farm. (ZHB's Findings of Fact, No. 5; R.R. 132a; R.R. 104a.) In 1973, the Township enacted its first zoning ordinance, effective March 11, 1973, (ZHB's Findings of Fact, No. 7, R.R. 104a), under which Landowner's farm was located in the district zoned A–1 Agricultural. On July 12, 1973, Landowners filed, and the ZHB granted, a petition for special exception to construct a dairy store on their property. (R.R. 127a.) Landowners' operation of the dairy store was a permitted use as an agriculturally-oriented commercial establishment under the 1973 zoning ordinance.[3] (R.R. 110a.). Between 1973 and 1975, in addition to the dairy store, Landowners built two other structures on their property to accommodate their dairy business, a milking parlor and a free-stall barn. (R.R. 104a–05a.) Landowners operated the dairy store from 1975 until 1986. (ZHB's Findings of Fact, No. 16, R.R. 106a.)

In 1986, Landowners filed a petition for a special exception, seeking to change the use of the dairy-store structure to "an antique store with spaces available to dealers on a rental basis." (R.R. 132a.) An antiques business was not a permitted use in an A–1 district under Township's zoning ordinance. However, by decision of August 7, 1986, the ZHB granted Landowners' petition for special exception, thereby permitting the change in use. (ZHB's Findings of Fact, No. 17, R.R. 106a.) Landowners' new business was so success-

---

1. Appellants are tenants of a fifty-acre parcel of farmland, which has been owned by their parents and parents-in-law, Marlin and Dolores Hitz, since 1949. (R.R. 103a–04a.) Appellants represent their parents' interests here, as appellants have had a power-of-attorney over their parents' affairs since 1995. (Trial court op. at 4.) Indeed, the parents started the antiques business, which is the subject of this case, and subsequently turned it over to appellants. Because the owner-lessors' and appellants' interests are identical for all intents and purposes, we will simplify matters and refer to both appellants and owners-lessors indiscriminately as "Landowners."

2. Although the ZHB and trial court based their decisions on a different rationale, we may nevertheless affirm if the basis for our affirmance is clear on the record. *Reynolds v. Zoning Hearing Board of Abington Township*, 134 Pa.Cmwlth. 382, 578 A.2d 629 (1990).

3. When a special exception is granted, the resulting use is a conforming use. *Warner Co. v. Zoning Hearing Board of Tredyffrin Township*, 148 Pa.Cmwlth. 609, 612 A.2d 578 (1992). The Township's zoning ordinance is in agreement. (R.R. 112a.) After the Township amended its zoning ordinance, effective July 13, 1978, Landowners' dairy store continued as a permitted, i.e. conforming, use. (R.R. 112a.)

ful that within a year the business doubled, and Landowners expanded it into the two adjacent structures, i.e. the milking parlor and the free-stall barn, without approval by the Township or its ZHB. (ZHB's Findings of Fact, Nos. 19, 28, R.R. 106a, 108a.) The Township advised Landowners that the expansion was in violation of the special exception granted to Landowners in 1986. (ZHB's Findings of Fact, No. 22, R.R. 107a.)

■ Faced with the threat of an enforcement proceeding, Landowners, in 1990, sought a variance to allow their expanded business to remain in the two additional structures. By decision dated January 24, 1991, the ZHB denied Landowners' request on the ground that Landowners failed to prove the criteria for a variance.[4] In an opinion dated September 24, 1997, the trial court affirmed the ZHB. (R.R. 140a–46a.) Landowners appealed but subsequently withdrew the appeal. (R.R. 108a.) Despite the decision against them, Landowners continued to run their antiques mall in the two adjacent structures. (ZHB's Findings of Fact, No. 28, R.R. 108a.)

On January 20, 1998, Landowners filed the subject petition for a variance to allow their business to remain in the two adjacent structures. Landowners alleged entitlement to the variance on two grounds: (1) as an expansion of their "nonconforming use," based on their "constitutional right protected by the due process clause" to provide for their antiques business' natural expansion to accommodate increased trade; and (2) under section 1305A of the Township's zoning ordinance, which governs nonconforming uses. (R.R. 3a–4a.)

■ With regard to the first ground, in its decision denying the variance,[5] the ZHB clearly was troubled by its 1986 decision granting the change in use for the dairy store.[6] The ZHB recognized that, in 1986, it had considered Landowners' petition for a special exception under an incorrect standard. Noting that it had used the standard applicable to requested changes from one nonconforming use to another nonconforming use, (R.R. 113a.), the ZHB stated that the 1986 special exception[7] erroneously permitted Landowners to change from a *conforming* use as a dairy store to a "nonconforming use" as an antiques mall. (R.R. 114a.) Without deciding whether the portion of Landowners' antiques business located in the dairy store was in fact a valid nonconforming use, the ZHB found that Landowners were

4. The criteria for a variance are:

(1) The property must possess unique physical circumstances; (2) those circumstances, in combination with the regulations, must cause unnecessary hardship – an unreasonable inhibition of usefulness of the property; (3) the hardship must not be self-inflicted; (4) the granting of a variance must not have an adverse impact on the health, safety and welfare of the general public; and (5) the variance sought must be the minimum variance that will afford relief.

*Jenkintown Towing Service v. Zoning Hearing Board of Upper Moreland Township,* 67 Pa. Cmwlth. 183, 446 A.2d 716, 720 (1982); *see also* § 912 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10910.2.

5. The ZHB ruled that the 1991 decision denying Landowner's request for a variance was not res judicata in the present case. The trial

court disagreed, but explained that the issue was not before it. (Op. at 5 n. 1.) Similarly, that issue is not before us.

6. We note that two of the ZHB members who decided Landowners' petition in the instant case participated in the 1986 decision.

7. "A special exception is granted within the discretion of the zoning board, under authority of an ordinance permitting the exercise of such discretion. A use which requires a special exception . . . is a permitted use when the property owner meets all of the conditions or requirements of the zoning ordinance and thereby obtains the approval of the board." *Township of Haverford v. Spica,* 16 Pa. Cmwlth. 326, 328 A.2d 878, 880 (1974). Here, the Township's 1978 zoning ordinance defines a "special exception" as "a use specified in district regulations . . ."; use as an antiques business is not one of the uses specified in the district regulations.

not entitled to expand their business into the two adjacent structures. The ZHB saw no need to determine whether the antiques business in the dairy store was a **valid** nonconforming use, reasoning that that determination did not affect the decision on the variance. The ZHB concluded that, even if Landowners' antiques business is a **valid** nonconforming use so that the doctrine of natural expansion applies, that doctrine was limited to cases where expansion was essential to the business' survival and not, as here, to simply take advantage of increased business. (R.R. 119a–21a.) Additionally, the ZHB concluded that, regardless of whether the antiques business is a **valid** nonconforming use, Landowners did not satisfy the criteria for a variance.[8]

As to the second ground for variance, the ZHB found section 1305A of the ordinance inapplicable. The ZHB noted that that section is limited to nonconforming uses existing on the date of the Township's enactment of its zoning ordinance, whereas Landowners' use and structures came into existence after that date. (R.R.123a.) The ZHB also stated that section 1305A's application was "premised upon the use being lawful and remaining lawful." (R.R. 123a.) The ZHB also determined that section 1305B was inapplicable because it was limited to a single "building," whereas here Landowners' various petitions and testimony characterized the structures as comprising three separate buildings. The ZHB stated that "it defies logic to call the three buildings 'one' when.. you cannot go from one building to the next without going outside." (R.R. 124a.)

Landowners appealed the ZHB's decision to the trial court, which affirmed, agreeing with the ZHB that the effect of the 1986 ZHB's decision was to "erroneously establish the antique store as a nonconforming use." (Op. at 7, 8.) The trial court explained that, although that error gave Landowners the right to continue to operate their antiques business in the dairy store structure, it did not give Landowners the right to expand into the two adjacent structures, because the ZHB had a duty to minimize the effects of its erroneous decision. (Op. at 10–11.)

On appeal, we are asked to decide whether Landowners may continue to run their antiques mall business out of the milking parlor and free-stall barn structures or whether their business must be restricted to the dairy store structure.[9] Landowners argue that they are entitled to expand their antiques business under (1) the doctrines of vested rights or variance by estoppel, (2) section 1305 of the Township's zoning ordinance, and (3) the constitutional doctrine of natural expansion of a nonconforming use. We conclude, as did the trial court and ZHB, that Land-

8. Indeed, that was the decision of the ZHB in 1991 on Landowners' first petition for a variance on traditional grounds. Because Landowners do not satisfy the criteria for a traditional variance, Landowners filed the present petition for a variance on the basis of a nonconforming use, reasoning that the existence of a nonconforming use satisfies some of the criteria, making it easier for Landowners to meet the criteria required for a variance.

In the present petition, the ZHB found that no unique physical conditions made the property different from the surrounding properties, that Landowners failed to demonstrate the requisite unnecessary hardship because their expansion was solely for the purpose of taking advantage of increased business, that any hardship was self-imposed as a result of Landowners' illegal, unapproved expansion, that a variance would alter the essential character of the primarily residential and agricultural neighborhood, and that expansion was detrimental to the public welfare because the unapproved expansion denied the municipality the power to control its land use and development. (R.R. 121a–22a.)

9. Because the trial court took no additional testimony, our scope of review is limited to a determination of whether the ZHB abused its discretion or committed an error of law. *See Valley View Civic Assoc. v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983). The ZHB abuses its discretion if its findings are not supported by substantial evidence. *See id.*

owners' business must be restricted to the dairy store structure.[10]

## DOCTRINES OF VESTED RIGHT OR VARIANCE BY ESTOPPEL

■■■ Landowners argue that they are entitled to expand their business into the two adjacent structures pursuant to the doctrines of vested rights and variance by estoppel. We disagree.[11] The vested rights doctrine permits a landowner to use his property without obtaining a variance. However, that doctrine applies only to cases where the applicant, in good faith reliance upon a permit issued in error, incurs significant non-recoverable costs. *City of Pittsburgh v. Zoning Board of Adjustment*, 522 Pa. 44, 559 A.2d 896 (1989). This is not such a case. Here Landowners' assertion that they are entitled to expand their business does not involve a permit issued in error.[12] Moreover, Landowners have not claimed any out-of-pocket expenses connected with the expansion of their business. Thus, the doctrine of vested rights is inapplicable. *See Teazers v. Zoning Board of Adjustment*, 682 A.2d 856 (Pa.Cmwlth.1996).

■■■ The doctrine of variance by estoppel is likewise inapplicable. To establish entitlement to variance by estoppel, Landowners must prove at a minimum (1) the Township's failure to enforce the law over a long period of time or some form of active acquiescence of the illegal use, (2) Landowners' own good faith throughout the proceedings, and (3) innocent reliance

evidenced by substantial expenditures. *Id.* "Other relevant factors include whether denial of a variance would impose unnecessary hardship and present a threat to public health, safety or morals." *See id.* at 860. Here, Landowners do not meet any of those conditions.

First, the Township neither failed to enforce the law with respect to Landowners' mall expansions; nor did it acquiesce to the Landowners' expansion. Rather, the record reflects that, when the Township became aware that Landowners had expanded their business, the Township issued several notices demanding that Landowners bring their business into compliance with the zoning ordinance. (Op. at 3.)

Second, Landowners did not demonstrate good faith throughout the proceedings. In fact, instead of seeking approval from the Township before expanding their business, Landowners simply expanded. Landowners did not seek Township approval for the expansion until after Landowners had received notice of the violations. Further, even after the 1997 decision denying Landowners' first request for a variance to expand their antiques business, Landowners continued in their unauthorized expansion of the antiques mall.

■■■ Third, Landowners have not established innocent reliance as evidenced by substantial expenditures. A variance by estoppel requires substantial expenditures to improve the property. *Skarvelis v.*

---

10. In the rationale for its decision, the ZHB reasoned that it could refuse to perpetuate or enlarge the error made in its 1986 decision permitting Landowners to run the antiques mall out of the dairy store structure. The trial court based its decision on this same rationale. However, there is nothing in the record to indicate that the ZHB acted improperly in 1986 when it issued the permit. *See Township of Haverford.* Because there is a rebuttable presumption that the officials issuing the permit acted properly, *see id.,* we cannot resolve this case simply by refusing to extend the ZHB's legally erroneous grant of a permit.

11. There is no question that Landowners have a vested right to continue their antiques business in the dairy store structure, and the trial court so found. *See Township of Haverford.* However, that vested right did not concomitantly establish their antiques business as a "nonconforming use." *See id.*

12. Here, the permit issued in error by the ZHB restricted Landowners' antiques business to the dairy store structure. No permit was issued permitting expansion to the adjacent structures.

*Zoning Hearing Board,* 679 A.2d 278 (Pa. Cmwlth.1996). Here, Landowners have not shown any such expenditure; Landowners expanded their business into pre-existing buildings.

## SECTION 1305 OF THE ZONING ORDINANCE

 Contrary to Landowners' claim, sections 1305A and B of the Township Zoning Ordinance do not entitle them to expand their business into the adjacent structure. Section 1305 reads in pertinent part:

*Nonconforming Uses of Structures or of Structures and Premises in Combination.*

If lawful use involving individual structures ... exists at the effective date of adoption or amendment of this Chapter, the lawful use may be continued so long as it remains otherwise lawful, subject to the following provisions:

A. No existing structure devoted to a use not permitted by this Chapter in the district in which it is located shall be enlarged or extended, except on contiguous property owned at the time of adoption of this Chapter.

B. Any nonconforming use may be extended throughout any parts of a building which were manifestly arranged or designed for such use at the time of adoption or amendment of this chapter.

Section 1305A is inapplicable to the present case, because it is limited to extending or enlarging structures devoted to a particular use. It contains no mention of extending that use into additional pre-existing structures as Landowners seek to do here.

Section 1305B likewise affords Landowners no protection. Landowners argue that their operation of the dairy store prior to the effective date of the 1978 ordinance brings them within the ambit of § 1305B. However, before 1978, the dairy store was a permitted, and, therefore, conforming use. To come within the ambit of § 1305B, the use at the time of enactment of the ordinance must have been a nonconforming use. Because no nonconforming use was being made of the dairy store structure at the time of enactment of the ordinance, § 1305B is inapplicable.

## THE DOCTRINE OF NATURAL EXPANSION

 A nonconforming use enjoys the right of natural expansion. *Silver v. Zoning Board of Adjustment,* 435 Pa. 99, 255 A.2d 506 (1969). A municipality is generally without power under the Constitution to prevent a landowner from enlarging a nonconforming use to provide for its natural expansion and the accommodation of increased trade.[13] *In re Appeal of Nowalk,* 67 Pa.Cmwlth. 545, 447 A.2d 1063 (1982).

 However, the doctrine of natural expansion is limited to lawful, i.e. **valid**, nonconforming uses. *Silver.* We have held that a nonconforming use that does not predate the relevant zoning restriction is not a **valid** nonconforming use.[14] *Township of Haverford v. Spica,* 16 Pa.Cmwlth. 326, 328 A.2d 878 (1974).[15] Here, because

13. However, the right to expand a nonconforming use is not unrestricted. The expansion is subject to applicable zoning regulations and may not be detrimental to the public health, safety or welfare. *Jenkintown Towing Service.*

14. This result is consistent with the MPC's definition of the term "nonconforming use" as limited to uses lawfully in existence prior to the enactment of the zoning ordinance or amendment, or prior to the application of

such ordinance or amendment to its location by reason of annexation. *See* § 107 of the MPC, 53 P.S. § 10107.

15. In *Township of Haverford,* we considered the effect of a township's issuance of a building permit that knowingly authorized a use that violated its zoning ordinance. When the township sought to prohibit the use thirty-five years later, the landowner asked the zoning hearing board to find that a nonconforming use had been established. The zoning hear-

Landowners' nonconforming use did not predate the Township's zoning ordinances restricting its use, no **valid** nonconforming use exists; thus, the doctrine of natural expansion is inapplicable.

The effect of limiting the doctrine of natural expansion to **valid** nonconforming uses is to restrict constitutional protection only to nonconforming uses that predate restrictions imposed by a zoning ordinance. *See Silver.* The rationale behind this limitation is simple. Where a landowner's nonconforming use predates the ordinance, that landowner has an expectation that he or she will be able to reasonably expand that use. If that landowner's expectation of expansion is thwarted, then the landowner may suffer a deprivation of property without due process of law.[16] *See* U.S. Const. amend. V; *Silver.* In contrast, where the nonconforming use does not predate the ordinance, but is granted as a matter of grace or error, the landowner does not enjoy the same expectation of expansion.[17] Thus, the landowner is not deprived of property without due process of law, and the constitutional doctrine of natural expansion does not apply.

■■■ This case fits within the latter situation. Here, the enactment of the Township's zoning ordinances in 1973 and 1978 did not make Landowners' use of their property nonconforming. Rather, Landowners' use of their property at the time of the enactment of the zoning ordinances was a permitted, and therefore, conforming use. Thus, Landowners were not unconstitutionally deprived of a prior use of their property by the enactment of the zoning ordinances. The ZHB's 1986 decision permitting Landowners to operate their antiques mall limited Landowners' new use to the dairy store structure. Although the 1986 decision, through grace or error, mischaracterized Landowners' antiques business as a nonconforming use, the effect of that mischaracterization was no different from what it would have been had the ZHB granted Landowners a use variance.[18] In other words, by mischaracterizing Landowners' use as a "nonconforming use," the ZHB did not automatically bestow upon Landowners' antiques business the constitutional protections peculiar to nonconforming uses that predate an ordinance. We therefore hold that, for a use to enjoy the constitutional protection of the doctrine of natural expansion associated with nonconforming uses, the use must have been lawfully in existence prior to the enactment of an ordinance or amendment making the use nonconforming, or prior to the application of such ordinance or amendment to the use's location by reason of annexation.[19]

Accordingly, we affirm the order of the trial court.

ing board refused to find a nonconforming use, but the trial court reversed. On appeal, we disagreed with the trial court, finding that a "nonconforming use requires that the use in question predate the relevant zoning restriction (or any pertinent amendment thereto)." *Id.* at 881. Thus, we found that a valid nonconforming use did not exist.

16. Of course, the right to expand a nonconforming use is not unrestricted. The expansion is subject to applicable zoning regulations and may not be detrimental to the public health, safety or welfare. *Jenkintown Towing Service.*

17. This is not to say that the doctrines of vested rights or variance by estoppel may not apply to a particular case. Here, however, we have found that Landowners do not come within those doctrines.

18. The ZHB has stated that, in 1986, it should have treated Landowners' petition for a special exception as a request for a use variance and then have considered the petition "according to applicable variance requirements." (R.R. 114a.)

19. Because of our holding here, we need not address the ZHB's conclusions that the doctrine of natural expansion of a nonconforming use does not permit expansion simply to take advantage of increased business and that, even if Landowners' antiques business were a "lawful nonconforming use," Landowners did not satisfy the criteria for a variance.

## ORDER

AND NOW, this 9th day of July, 1999, the order of the Court of Common Pleas of Lebanon County, dated November 19, 1998, is hereby affirmed.